## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ASHLEE MARTSOLF, on behalf of herself and others similarly situated,** | : | **CIVIL ACTION NO. 1:04-CV-1346** |
| | : | |
| | : | **(CLASS ACTION/CONSOLIDATED)** |
| **Plaintiff,** | : | |
| | : | **(Judge Conner)** |
| **v.** | : | |
| | : | |
| **JBC LEGAL GROUP, P.C., JACK H. BOYAJIAN, MARVIN BRANDON, and OUTSOURCE RECOVERY MANAGEMENT, INC.,** | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| **Defendants** | : | |

## <u>MEMORANDUM</u>

This is a class action instituted by Ashlee Martsolf ("Martsolf"), on behalf of herself and others similarly situated, alleging that defendants' debt collection practices violate the Fair Dept Collection Practices Act ("FDCPA" or "the Act"), 15 U.S.C. §§ 1692-1692p.  Martsolf and defendants have filed cross-motions (Docs. 105, 108) for summary judgment.  For the reasons that follow, both motions will be granted in part and denied in part.[1]

---

[1]Martsolf has also filed a motion (Doc. 124) to strike averments in an affidavit executed by defendant Jack H. Boyajian ("Boyajian") alleging that they are inconsistent with Boyajian's prior deposition testimony.  For the reasons discussed at note 13, <u>infra</u>, the motion will be denied.

I.   **Statement of Facts** [2]

During early 1994, two blank checks signed by Martsolf, a resident of

Pennsylvania, and drawn on her bank account were presented to Service

Merchandise, a now-defunct chain of retail stores.  (Doc. 107 ¶ 1; Doc. 110 ¶ 19; Doc.

117 ¶ 1; Doc. 120 ¶ 19.)  The checks, dated March 18 and March 20, 1994, were

dishonored soon after presentment.  (Doc. 107 ¶ 1; Doc. 107, Ex. G; Doc. 107, Ex. H;

Doc. 110 ¶ 19; Doc. 117 ¶ 1; Doc. 120 ¶ 19.)  Defendant Outsource Recovery

Management ("ORM") purchased the debt associated with the two checks during

the years between their issuance and the institution of the present action.[3]  (Doc.

107, Ex. F at 39; Doc. 110 ¶ 7; Doc. 120 ¶ 7.)  ORM retained defendant JBC Legal

Group ("JBC") to attempt to collect the debt.  JBC is a law firm that engages in the

collection of defaulted debt.  (Doc. 107 ¶¶ 2-3, 13; Doc. 110 ¶¶ 2, 8; Doc. 117 ¶¶ 2-3, 13;

Doc. 120 ¶¶ 2, 8.)  Defendant Jack H. Boyajian ("Boyajian") is the president of both

JBC and ORM and the sole owner of JBC.  He has no ownership interest in ORM.

(Doc. 107 ¶ 6; Doc. 114 ¶ 3; Doc. 110 ¶ 2; Doc. 114 ¶ 3; Doc. 117 ¶ 6; Doc. 120 ¶ 2.)

ORM's primary business is the purchase of defaulted debt, and it retains JBC

and other law firms to collect the obligations it acquires.  (Doc. 107 ¶ 9; Doc. 107, Ex.

---

[2]In accordance with the applicable standard of review, see infra Part II, the court will present the facts in the light most favorable to the non-movant with respect to each motion.

[3]The record does not contain the date on which ORM acquired the debt or the identity of its predecessor in interest.

F at 33-34; Doc. 117 ¶ 9.)  JBC regularly receives large bundles of data about the

debt purchased by ORM, and a single data set may contain information about a

large number of debtor accounts.  (Doc. 107, Ex. D at 63-65; Doc. 128 at 23-25; cf.

Doc. 107, Ex. I (listing quantities of collection letters sent by JBC).)  Boyajian

performs a series of technological and statistical analyses that he developed on the

data to identify anomalies within a data set.  (Doc. 107, Ex. D at 63-65; Doc. 114 ¶ 5.)

Based on the results of these analyses, Boyajian determines which accounts contain

sufficient information to issue a collection letter and which ones contain only

incomplete information upon which no letter can be issued.  (Doc. 107, Ex. D at 64;

Doc. 114 ¶ 5.)  ORM retains JBC to collect accounts that contain complete

information.  (Doc. 107, Ex. D at 64; Doc. 114 ¶ 5.)  Accounts lacking crucial

information are returned to ORM.  (Doc. 107, Ex. D at 64; Doc. 114 ¶ 5.)  This review

occurs very rapidly and allows Boyajian to accept or reject large quantities of

accounts at one time.  (Doc. 107, Ex. D at 64; Doc. 114 ¶ 5; Doc. 128 at 25-26.)

Boyajian performed these procedures on Martsolf's account.  He agreed that

JBC would represent ORM in the collection of Martsolf's debts.  JBC then sent two

collection letters dated April 24, 2004 to Martsolf.  (Doc. 107, Exs. G & H.)  Both

letters appear on letterhead reading:  "JBC LEGAL GROUP, P.C. / Attorneys at

Law / A California Professional Corporation."  (Id.)  JBC's letterhead lists four

attorneys, who collectively are licensed in California, the District of Columbia,

Kansas, Massachusetts, New Jersey, and New York.  (Id.)

The bodies of the letters read as follows:

> This firm represents the successors in interest of the obligation you created and have not yet satisfied when you passed the bad check(s) identified below.  Below are the details of each dishonored check.  In addition to the full amount of the check(s), under applicable provisions of the Uniform Commercial Code, our client is entitled to a $30.00 per check fee as a service charge to handle your dishonored check(s). . . .

* * *

> Pursuant to Pennsylvania law, you have thirty (30) days from receipt of this letter to pay the full amount of each check plus a service charge of $30.00 per check . . . .  You are cautioned that unless this total amount is paid in full within thirty (30) days after the date this letter is received, you may be subject to a civil penalty, court costs and reasonable attorney fees after suit has been filed.

(Id.)  Both letters are signed:  "Very truly yours, / JBC LEGAL GROUP, P.C. / Attorneys at Law."  (Id.)

Martsolf filed the complaint instituting the present case on June 23, 2004. (Doc. 1.)  The court certified the matter as a class action on February 7, 2005, and Martsolf filed an amended complaint the same day.  (Docs. 29, 30.)  The complaint alleges that the collection practices of Boyajian and JBC violated the FDCPA in several respects. [4]  She alleges that defendants' collection letters threatened to institute suit to collect a time-barred debt, and attempted to collect a $30 returned-

---

[4]Martsolf no longer maintains her FDCPA allegations against defendant Marvin Brandon.  (See Doc. 106 at 2 n.1; Doc. 121 at 17.)  The court will grant summary judgment in his favor on all claims.

check fee not authorized under Pennsylvania law.  She further argues that Boyajian

and JBC misrepresented the amount of her debt (due to inclusion of the returned-

check fee in the total debt amount) and misrepresented the level of attorney review

that her account received.[5]  She avers that these actions violated specific provisions

of the Act and its general prohibition on the use of "false representation[s] or

deceptive means to collect" a debt.  15 U.S.C. § 1692e(10).  Finally, she contends that

---

[5]Martsolf's summary judgment filings also raise an additional claim that defendants violated the FDCPA by failing to provide the name of the creditor to whom she owed the debt within five days of issuing the collection letters.  (See Doc. 106 at 24-25.)  She filed a motion for leave to file an amended complaint asserting these claims.  (See Doc. 96.)  Her request was still pending at the dispositive motion deadline, and she argues these grounds in her summary judgment filings.  The court subsequently denied her leave to amend, observing that "the facts giving rise to this claim were known to plaintiff when she filed the original complaint" and that "plaintiff could have added this claim when granted leave to amend the complaint." (Doc. 135 at 1.)  She cannot raise this claim at the summary judgment phase because she failed to address it in either of the two complaints she filed.  See Tome v. Harley Davidson Motor Co., No. 1:CV-06-2155, 2007 WL 3125090, at *7 (M.D. Pa. Oct. 24, 2007) ("Claims not alleged in a complaint may not be raised for the first time in opposition to a motion for summary judgment.").  Any attempt to do so results in the newly asserted claims being deemed waived.  See Shingara v. Skiles, No. 1:04-CV-0621, 2007 WL 210800, at *3 n.5 (M.D. Pa. Jan. 24, 2007) (holding that claims raised in the first instance at the summary judgment phase are waived); Protocol Elecs., Inc. v. Transolutions, Inc., No. Civ. 03-4162, 2005 WL 1106132, at *5 (D.N.J. Apr. 29, 2005) ("[I]t is impermissible, without leave of court, to raise new claims for the first time on summary judgment."); see also Krouse v. Amer. Sterilizer Co., 126 F.3d 494, 499 (3d Cir. 1997).

Nevertheless, Martsolf argues that she may also advance this argument under 15 U.S.C. § 1692e(10), which generally prohibits debt collectors from using misrepresentations or deceptions to collect a debt.  15 U.S.C. § 1692e(10).  Her complaint alleges that defendants violated § 1692e(10) but contains no factual allegations regarding their alleged failure to inform her of her creditor's identity.  Plaintiff's motion for summary judgment will be denied on this ground; defendants' motion will be granted.

ORM, itself a debt collector, is vicariously liable for FDCPA violations committed by JBC and Boyajian in the course of collecting debts on its behalf.  The parties have fully briefed these issues, which are now ripe for disposition.

## II.   <u>Standard of Review</u>

Through summary judgment the court may dispose of those claims that do not present a "genuine issue as to any material fact," and for which a jury trial would be an empty and unnecessary formality.  <u>See</u> Fed. R. Civ. P. 56(c).  It places the burden on the non-moving party to come forth with "affirmative evidence, beyond the allegations of the pleadings," in support of its right to relief.  <u>Pappas v. City of Lebanon</u>, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004); Fed. R. Civ. P. 56(e); <u>see also</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986).  This evidence must be adequate, as a matter of law, to sustain a judgment in favor of the non-moving party on the claims.  <u>See</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250-57 (1986); <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587-89 (1986);  <u>see also</u> Fed. R. Civ. P. 56(c), (e).  Only if this threshold is met may the cause of action proceed.  <u>Pappas</u>, 331 F. Supp. 2d at 315.

The court is permitted to resolve cross-motions for summary judgment concurrently.  <u>Cf.</u> <u>Assicurazioni Generali, S.P.A. v. Pub. Svc. Mut. Ins. Co.</u>, 77 F.3d 731, 733 & n.2 (3d Cir. 1996) (observing that district court may dispose of case through cross-motions for summary judgment); <u>see also</u> 10A Charles Alan Wright et al., Federal Practice and Procedure § 2720 (3d ed. 1998).  When

doing so, the court is bound to view the evidence in the light most favorable to the non-moving party with respect to each motion. FED. R. CIV. P. 56; <u>United States v. Hall</u>, 730 F. Supp. 646, 648 (M.D. Pa.1990).

## III.   <u>Discussion</u>

The FDCPA is a remedial statute designed to protect consumers from the ills that often accompany abusive debt-collection practices.[6]  <u>See</u> 15 U.S.C. § 1692(a), (e); <u>Schaffhauser v. Citibank (S.D.) N.A.</u>, No. 1:05-CV-2075, 2007 WL 2752141, at *2 (M.D. Pa. Sept. 19, 2007) (describing policies of FDCPA, including elimination of abusive collection practices.)  Congress implemented the statute to regularize debt collection practices on a national scale and to ensure that all debt collectors seek repayment of debts without threatening, intimidating, or harassing consumers.  <u>See</u> 15 U.S.C. § 1692(e).  As a remedial statute, courts apply the language of the FDCPA broadly to effectuate these policies among financially savvy and economically unfledged consumers alike.  <u>See</u> <u>Campuzano-Burgos v. Midland Credit Mgmt.</u>, 497 F. Supp. 2d 660, 662 (E.D. Pa. 2007) (quoting <u>Clomon v. Jackson</u>, 988 F.2d 1314, 1318 (3d Cir. 1993)) ("The basic purpose of the least-sophisticated consumer standard is to ensure that the FDCPA protects all consumers, the gullible as well as the shrewd.").

---

[6]JBC concedes that it is a debt collector within the meaning of the FDCPA, 15 U.S.C. § 1692a(6).  (Doc. 107 ¶ 3; Doc. 117 ¶ 3.)  Martsolf is a "consumer" within the protection of the FDCPA, and her checks returned for insufficient funds constitute "debts" to which its collection provisions apply.  15 U.S.C. § 1692a(3), (5); <u>Fed. Trade Comm'n v. Check Investors, Inc.</u>, 502 F.3d 159, 169-71 (3d Cir. 2003).

Courts evaluate whether a debt collector's communication with a debtor complies with the Act under the "least sophisticated consumer" or "least sophisticated debtor" standard.  This standard requires that courts consider the impression that the least sophisticated debtor would receive from the debt collector's communications.  Brown v. Card Svc. Ctr., 464 F.3d 450, 453 (3d Cir. 2006); see also Schaffhauser, 2007 WL 2752141, at *3.  "The least sophisticated debtor standard requires more than 'simply examining whether particular language would deceive or mislead a reasonable debtor' because a communication that would not deceive or mislead a reasonable debtor might still deceive or mislead the least sophisticated debtor."  Brown, 464 F.3d at 454.  This standard ensures that all consumers receive similar protection under the FDCPA regardless of their financial expertise.  Id.

Whether a communication is misleading under the FDCPA presents a question of law for the court; disputed facts must be resolved by a jury.  See Wilson v. Quadramed, 225 F.3d 350, 353 n.2 (3d Cir. 2000) (holding that collection letter's compliance with FDCPA presents a question of law); Dupuy v. Weltman, Weinberg & Reis Co., 442 F. Supp. 2d 822, 824 (N.D. Cal. 2006) (quoting Van Westrienen v. Americontinental Collection Corp., 94 F. Supp. 2d 1087, 1099 (D. Or. 2000)) ("Whether language employed in connection with the collection of debt violates the FDCPA is a question of law for the court to decide."); Gionis v. Javitch, Block & Rathbone, 405 F. Supp. 2d 856, 873 (S.D. Ohio 2005) (same); Shimek v. Weissman,

8

<u>Nowack, Curry & Wilso, P.C.</u>, 323 F. Supp. 2d 1344, (N.D. Ga. 2003) (same).  With these considerations in mind, the court will turn to the substance of Martsolf's FDCPA allegations.

### A.    <u>Liability for Violation of the FDCPA</u>

Martsolf alleges that defendants' collection letters violate the FDCPA by (1) threatening to institute suit to collect a time-barred obligation; (2) representing that Pennsylvania law authorized collection of a $30 returned-check fee; (3) misrepresenting the total amount of the debt; and (4) misrepresenting that an attorney had reviewed her debts and reached a profession opinion that they were effective.  She also alleges that these actions violated the FDCPA's general prohibition against the use of misleading or deceptive communications to collect a debt.

### 1.    <u>Attempts to Collect Martsolf's Time-Barred Debts</u>

FDCPA provisions codified at § 1962e(5) provide that "[a] debt collector may not use any false, deceptive, or misleading representation in connection with the collection of any debt[ including:] . . . [t]he threat to take any action that cannot legally be taken or that is not intended to be taken."  15 U.S.C. § 1692e(5). Subdivision (2)(A) of the same section prohibits debt collectors from falsely representing "the character, amount, or legal status of any debt."  15 U.S.C.

§ 1692e(2)(A).  "A threat to sue a consumer on a claim that the debt collector knows

is barred by the statute of limitations violates § 1692e(2)(A) of the FDCPA." [7]

<u>Aronson v. Commercial Fin. Svcs., Inc.</u>, No. Civ. A. 96-2113, 1997 WL 1038818, at *2

(W.D. Pa. Dec. 22, 1997) (citing <u>Kimber v. Fed. Fin. Corp.</u>, 668 F. Supp. 1480, 1489

(M.D. Ala. 1987); <u>see also</u> <u>Beattie v. D.M. Collections, Inc.</u>, 754 F. Supp. 383, 393

(D. Del. 1991) ("[T]he threatening of a lawsuit which the debt collector knows or

should know is unavailable or unwinnable by reason of a legal bar such as the

statute of limitations is the kind of abusive practice the FDCPA was intended to

eliminate.").  The state law under which the debt arises provides the applicable

statue of limitations for purposes of determining whether the obligation is time-

barred.  <u>See</u> <u>Johnson v. Riddle</u>, 305 F.3d 1107, 1119 (10th Cir. 2002) (holding that

state law provides applicable legal regulations for collection of a dishonored check).[8]

This prohibition applies with equal force in all states, regardless of whether

expirations of the limitations period completely extinguishes a debt or merely

---

[7] A debt collector may threaten suit or institute proceedings to collect a time-barred debt if, after reasonable inquiry, the debt collector discovers evidence that may warrant a tolling of the applicable statute of limitations.  <u>See</u> <u>Kimber v. Fed. Fin. Corp.</u>, 668 F. Supp. 1480, 1487 (M.D. Ala. 1987) ("[A] debt collector's filing of a lawsuit on a debt that appears to be time-barred, without the debt collector having first determined after a reasonable inquiry that that limitations period has been or should be tolled, is an unfair and unconscionable means of collecting the debt."); <u>see also</u> <u>Stepney v. Outsourcing Solutions, Inc.</u>, No. 97 C 5288, 1997 WL 722972, at *4 (N.D. Ill. Nov. 13, 1997).

[8]The statute of limitations used to determine whether a debt is time-barred is distinct from the one-year statute of limitations for bringing suit for violation of the FDCPA itself.  15 U.S.C. § 1692k(d).

prevents judicial enforcement of it. See Wallace, 168 F. Supp. 2d at 128 (noting that when expiration of a limitations period does not extinguish debt, a debt collector is nevertheless barred from threatening suit upon it).  In states, including Pennsylvania, that adopt the latter provision, a debt collector may request voluntary repayment of the debt but may not threaten suit based upon it.  See Freyermuth v. Credit Bureau Svcs., Inc., 248 F.3d 767, 771 (8th Cir 2001); Ehsanuddin v. Wolpoff & Abramson, No. Civ. A. 06-708, 2007 WL 543052, at *4 n.1 (W.D. Pa. Feb. 16, 2007); Wallace v. Capital One Bank, 168 F. Supp. 2d 526 (D. Md. 2001) (holding that when expiration of a limitations period does not extinguish debt, a debt collector may send a collection letter that does no more than request voluntary repayment).  The debt collector may not engage in tactics that would cause the least sophisticated consumer to believe that he or she could be subject to litigation for failure to fulfill the obligation.  See Ehsanuddin, 2007 WL 543052, at *4; Beattie, 754 F. Supp. at 393.

In the case *sub judice*, the Pennsylvania Uniform Commercial Code ("UCC") governs sales transactions such as that in which Martsolf's checks were presented. Under the UCC a suit for recovery upon a dishonored check "must be commenced within three years after dishonor of the [check] or ten years after the date of the [check], whichever period expires first."  13 PA. CONS. STAT. § 3118(c).  Martsolf's dishonored checks were dated March 18, 1994 and March 20, 1994.  The ten-year statute of limitations for suit on the checks expired on March 18, 2004 and March

20, 2004, respectively.  The three-year post-dishonor limitations period is irrelevant because the running of the ten-year period extinguished the creditor's right to file suit regardless of whether three-year period had yet to expire.  <u>See</u> <u>id.</u>  JBC did not send the demand letters to Martsolf until April 24, 2004, after expiration of the statute of limitations.  The FDCPA therefore prohibited JBC from threatening suit to collect the debt.  The court must evaluate the language of the collection letters to determine whether the least sophisticated debtor would perceive them as a litigation threat.

The letters JBC sent to Martsolf state: "You are cautioned that unless this total amount is paid within thirty (30) days after the date this letter is received, *you may be subject to a civil penalty, court costs, and reasonable attorney fees after suit has been filed.*"  (Doc. 107, Exs. G & H (emphasis added)).  JBC suggests that this sentence is nothing more than an innocuous entreaty, requesting Martsolf to make voluntary recompense for the outstanding debt.  (<u>See</u> Doc. 109 at 11 (quoting <u>Abels v. JBC Legal Group, P.C.</u>, 428 F. Supp. 2d 1023, 1029 (N.D. Cal. 2005)) (arguing that letters are a "prudential reminder" to debtors about their obligations)).  The court disagrees.  JBC's collection letter charges the debtor with potential liability for "a civil penalty, court costs, and reasonable attorney fees."  (Doc. 107, Exs. G & H.)  JBC's exhortation regarding potential liability for costs recoverable through court proceedings certainly casts an ominous shadow of litigation over the collection letters.  <u>Cf.</u> <u>Abels</u>, 428 F. Supp. at 1029 (concluding that collection letter did not

threaten suit in part because words such as "suit," "action," "case," and "litigation"

were absent from its text).[9]  Warning that JBC may recoup these costs "*after suit*

———————————

[9]The court would be remiss if it did not admonish defense counsel for representations contained in defendants' summary judgment filings regarding <u>Abels</u>.  Defendants' counsel has submitted an affidavit declaring:

> I am defense counsel in the <u>Abels v. JBC</u> case, case no. 04-2345 JW, venued in the Northern District of California, San Jose Division.  The letter at issue in the <u>Abels</u> case is nearly identical to the letter in the instant case.

(Doc. 111 ¶ 2.)  Counsel has quoted the contents of the letters at issue in <u>Abels</u> ("the <u>Abels</u> letters) in various summary judgment filings but has not attached a copy of the letters thereto.  The court has procured a complete copy of the letters from the <u>Abels</u> docket and has thoroughly perused them.  The <u>Abels</u> letters are completely devoid of language in those presently before the court ("the <u>Martsolf</u> letters") admonishing debtors that they may be liable for "a civil penalty, court costs, and reasonable attorney fees after suit has been filed."  (Doc. 107, Exs. G & H.)  Defense counsel's failure to apprise the court of this distinction becomes increasingly troubling in light of the opinion issued in <u>Abels</u>, which stated:

> The language in these Letters clearly do not threaten litigation even to the least sophisticated debtor.  *Words such as 'suit,' 'action', 'case,' or 'litigation' do not appear in the Letters.  There is no indication that litigation is imminent.*  Rather, the least sophisticated debtor would read the text of the letter as informational . . . .

<u>Abels</u>, 428 F. Supp. 2d at 1029 (emphasis added).  This language represents the gravamen of the court's rationale that the <u>Abels</u> letters did not threaten litigation.  It is certainly improvident—and perhaps disingenuous—to represent that the <u>Abels</u> letters are "nearly identical" to the <u>Martsolf</u> letters when the latter missives contain the very language the absence of which the <u>Abels</u> court found compelling.  <u>See</u> PA. R. PROF. CONDUCT 3.3(a)(1) ("A lawyer shall not knowingly[] make a false statement of material fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer."); <u>id.</u> cmt. 3 ("[A]n assertion purporting to be on the lawyer's own knowledge, as in an affidavit by the lawyer . . . may properly be made only when the lawyer knows the assertion is true or believes it to be true on the basis of a reasonably diligent inquiry."); L.R. 83.23.2 (adopting Pennsylvania Rules of Professional Conduct).  Counsel should have, at

*has been filed*" is a transparent threat of litigation.  See, e.g., Goins v. JBC & Assocs., P.C., 352 F. Supp. 2d 262, 265, 272 (D. Conn. 2005) (concluding that use of language stating "[y]ou may wish to settle this matter before we seek appropriate relief before a court of proper jurisdiction" violates the FDCPA); Francis v. Snyder, 389 F. Supp. 2d 1034, 1037, 1041-42 (N.D. Ill 2005) (finding that letter violated FDCPA when it advised: "[i]f you contact this office on receipt of this letter you may qualify for a payment plan.  If you do not call, the balance will be pursued in full, including collection costs" ); Nance v. Friedman, No. 98 C 6270, 2000 WL 1700156, at *2 (N.D. Ill. Nov. 8, 2000) (holding that collection letter threatened litigation because it contained language discussing the "necessity of filing suit" and referenced "possible legal action").  The court finds that the collection letters would cause the least sophisticated debtor to believe that he or she would be presented with summons and a complaint if repayment was not made.  JBC's letter threatens litigation, and sending it to Martsolf after expiration of the limitations period violated the FDCPA.  Martsolf's motion for summary judgment will be granted to the extent that JBC and Boyajian have threatened suit on time-barred debts.

---

the very least, submitted a complete copy of the Abels letters to allow the court to confirm the similarity between the two sets of letters.  See In re Universal Minerals, Inc., 755 F.2d 309, 313 (3d Cir. 1985) (quoting Fusari v. Steinberg, 419 U.S. 379, 391 (1975)) ("Counsel have 'a continuing duty to inform the Court of any development which may conceivably affect an outcome' of the litigation.").

## 2.    **Attempt to Collect a Returned Check Fee**

The FDCPA prohibits a debt collector from collecting or attempting to collect "any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1).  This section governs the collection of charges for returned checks.  See Police v. Nat'l Tax Funding, L.P., 225 F.3d 379, 408 (3d Cir. 2000); Still v. JBC Assocs., P.C., No. Civ. 02-3550, 2005 WL 1334715, at *2 (D.N.J. June 3, 2005).

In the present matter, defendants argue that the UCC provisions authorizing recovery of incidental and consequential damages, see 13 PA. CONS. STAT. § 2710, permit collection of the $30 returned check fee.  Relatively few courts have considered whether the UCC incidental damage provisions authorize a seller to collect a returned check fee.  Several courts have concluded that the UCC affirmatively authorizes sellers to collect such a fee as an incidental damage, thereby preventing an FDCPA violation.  See Tuttle v. Equifax Check, 190 F.3d 9, 15 (2d Cir. 1999) (concluding that debt collector did not violate FDCPA when collecting a returned check fee because "under the UCC, [a debt collector i]s permitted to impose and collect its service charge (commercially reasonable 'incidental damages') as part of its recovery of the face value of [the debtor's] check); Abels v. JBC Legal Group, P.C., 434 F. Supp. 2d 763, 765-66 (N.D. Cal. 2006) (noting that UCC incidental damages provision allows assignee of debt to collect

returned check because original seller could have done so as an incidental damages of buyer's breach); <u>Lee v. Sec. Check, LLC</u>, 203 F. Supp. 2d 657, 661-62 (N.D. Miss. 2000) (holding that a seller may collect a returned check charge as an incidental damage under the UCC.).  The Federal Trade Commission ("FTC"), charged with enforcing the FDCPA, has similarly concluded that the Act permits recovery of collection fees to the extent authorized by state law.  <u>See</u> FTC Commentary on the Fair Debt Collection Practices Act, 53 Fed. Reg. 50097, 50108 (1988) ("For purposes of [§ 1692f(1), 'amount' includes not only the debt, but also any incidental charges, such as collection charges, interest, service charges, late fees, and bad check handling fees.").  However, a returned check fee must represent the seller's reasonable incidental costs of collecting the debt.  <u>See</u> <u>Tuttle</u>, 190 F.3d at 15.  The court observes that returned check fees of $30 have been found reasonable as a matter of law.  <u>See</u> <u>Lee</u>, 203 F. Supp. 2d at 661 ("[T]he court is of the opinion that the uniform commercial statutes permitted Security Check to impose the $30.00 service charge.").

In the instant case, the collection letters sent to Martsolf state that the UCC allows JBC and Boyajian to collect a $30 service charge for each returned check. The court finds persuasive the conclusions of other tribunals that the UCC authorizes collection of such a charge.  FTC commentaries stating that collection of such fees aligns with the policies of the FDCPA lends further support to this conclusion.  Accordingly, JBC's request for a $30 returned check fee per dishonored

16

check did not violate the FDCPA prohibition on collection amounts beyond those permitted by applicable law or agreement. Defendants' motion for summary judgment will be granted on this claim.[10]  Martsolf's motion will be denied.

### 3.  Representation of the Total Amount of the Debt

The FDCPA prohibits a debt collector from misrepresenting the amount of a debt upon which collection attempts are made. See 15 U.S.C. § 1692e(2)(A) (proscribing debt collectors from making a "false representation of . . . the . . . amount . . . of any debt). A debt collector that inflates the amount of the debt, whether through unauthorized service fees or otherwise, violates this provision of the FDCPA. See Irwin v. Mascott, 112 F. Supp 2d 937, 947-48 (N.D. Cal. 2000) (holding that collection letter demanding charges and fees not permitted by law

---

[10]Defendants request that the court take judicial notice of fee schedules promulgated by the Judicial Conference of the United States that impose a $45 fee for a returned check. (See Doc. 112 & Exs. 1-6.) Having concluded that defendants' $30 fee is permitted under the UCC as a matter of law without consideration of these materials, the court denies defendant's request as moot. This denial has no effect on defendant's ability to renew the request at a later point in the proceedings.

Defendants also request the court to take judicial notice of plaintiff's amended complaint. (See Doc. 112 & Ex. 7.) It is unclear what, if any, benefit defendants gain by doing so rather than simply citing to the complaint as it presently appears on the dockets. Nevertheless, having been presented with the amended complaint and the request, the court takes judicial notice that the document attached as Exhibit 7 to Document 112 on the docket in the above-captioned case is, in fact, the amended complaint filed by plaintiff. The court takes judicial notice only of the limited fact that the amended complaint was indeed filed. Judicial notice of pleadings has no effect on the veracity of the allegations therein, as the truth or falsehood of "adjudicative fact[s] . . . should be left to the normal methods of proof" under the Federal Rules of Evidence. 21B CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 5106.4, at 245 (2d ed. 2005).

violated § 1692e(2) prohibition against misrepresenting the amount of the debt);

<u>Sandlin v. Shapiro & Fishman</u>, 919 F. Supp. 1564, 1569 (M.D. Fla. 1996) (denying

defendants' motion to dismiss a claim alleging that they misrepresented total

amount of debt because defendants attempted to collect mortgage payoff fees not

permitted under terms of mortgage).

   In the present matter, JBC's collection letters demand payment for the face

value of dishonored checks and a $30 returned check fee.  The letters list the

amount of the debt separate from the returned-check charges and include the total

amount due for both liabilities.  They inform the debtor: "[O]ur client is entitled to a

$30.00 per check fee as a service charge to handle your dishonored checks.

Accordingly, demand is hereby made for a total payment of [the amount

outstanding on the debt plus the $30 returned check charge]."  (Doc. 107, Exs. G &

H.)  The letters do not artificially inflate either the amount of the debt or the service

fee, do not seek to collect any amounts extraneous to the debt.  Therefore, the

letters do not misrepresent the amount due in violation of § 1692e(2)(A).

Defendants' motion will be granted with respect to that claim; Martsolf's motion

will be denied.

### 4.   <u>Representation of Attorney Review</u>

   The FDCPA prohibits a debt collector from "false[ly] represent[ing] or

impl[ying] that any individual is an attorney or that any communication is from an

attorney" if, in fact, no attorney reviewed the debt.  15 U.S.C. § 1692e(3).  The

purpose of this provision is twofold:  First, it prohibits non-attorney debt collectors from posturing  as attorneys.  <u>See</u> <u>Check Investors</u>, 502 F.3d at 166 ("The prohibition on false, deceptive or misleading representations precludes a debt collector from falsely representing that a dunning letter was sent by an attorney."). Second, it prevents attorneys performing debt collections from communicating with debtors in a manner that suggests that the attorney has professionally evaluated the debtor's alleged obligations when no such review has occurred.  <u>See</u> <u>Boyd v. Wexler</u>, 275 F.3d 642, 644 (7th Cir. 2001) ("[A] lawyer who . . . is a debt collectors violates section 1692e(3) . . . if he sends a collection letter that he has not reviewed, since his lawyer's letter then falsely implies that he has reviewed the creditor's claim."); <u>Crossley v. Lieberman</u>, 868 F.2d 566, 570 (3d Cir. 1989) ("Abuses by attorney debt collectors are more egregious than those of lay collectors because a consumer reacts with far more duress to an attorney's improper threat of legal action than to a debt collection agency committing the same practice.").  An attorney debt collector therefore violates this provision if:  (1) the attorney send a collection letter to a debtor that implies that the attorney has reviewed the debt; and (2) the attorney has not, in fact, performed an independent, professional examination of the debtor's portfolio.  <u>Cf.</u> <u>Clomon</u>, 988 F.2d 1321 (holding that, in the absence of actual attorney review of a debtor's file, the use of an attorney signature on collection letters violates the FDCPA because it conveys that an attorney has evaluated the debt).

The United States Court of Appeals for the Third Circuit has not had occasion to evaluate which types of collection letters convey an impression of attorney review; however, its sister court for Second Circuit has explicated this question in some detail.  The Second Circuit has instructed that attorneys may not sign collection letters on law firm letterhead unless they have personally reviewed the debtors' file.  The combined effect of the signature and the letterhead implies that an attorney has reached a professional judgment that the debt is legally effective.  <u>Clomon</u>, 988 F.2d at 1321 ("[T]he use of an attorney's signature on a collection letter implies . . . that the attorney directly controlled or supervised the process through which the letter was sent."); <u>Campuzano-Burgos</u>., 497 F. Supp. 2d at 664.  Similarly, "a letter sent on law firm letterhead, *standing alone*, . . . represent[s] a level of attorney involvement to the debtor receiving the letter," even if no attorney signature appears on the document.  <u>Greco v. Trauner, Cohen & Thomas, LLP</u>, 412 F.3d 360, 364 (2d Cir. 2005) (holding that issuance of collection letter on law firm letterhead implies that attorneys have been involved in analysis of the debt and that, if no such involvement occurred, the letter may violate the FDCPA); <u>cf. Rosenau v. Unifund Corp.</u>, No. Civ. A. 06-1355, 2007 WL 1892888, at *3 n.26 (E.D. Pa. June 28, 2007) (observing that collection letter sent by non-attorneys did not imply that it originated with an attorney because phrases such as "attorney-at-law" and "lawyer" were absent).  "An attorney can, in fact, send a debt collection letter without being meaningfully involved as an attorney within the collection

process, so long as that letter includes disclaimers that should make clear even to

the 'least sophisticated consumer' that the law firm or attorney sending the letter is

not, at the time of the letter's transmission, acting as an attorney."  <u>Greco</u>, 412 F.3d

at 364.

In the present case, the letter Martsolf received appears on JBC's law firm

letterhead.  Its header reads "JBC LEGAL GROUP, P.C. / Attorneys at Law" and

contains the names of four attorneys and three law offices.  The letter is signed

"JBC LEGAL GROUP, P.C. / Attorneys at Law."  The firm name appears in capital

letters in both places, and the words "Attorneys at Law" are boldface, italic type,

and larger than that used throughout the remainder of the document.  The body of

the letter confirms that JBC is a law firm, and the first line states:  "This firm

represents the successors in interest of the obligation you created and have not yet

satisfied when you passed the bad check(s) identified below."  (Doc. 107, Exs. G &

H.)  The court finds that these indicia of attorney involvement would cause the least

sophisticated debtor to believe that the letter originated with a lawyer.[11]

An attorney who represents that he or she has evaluated the debtor's

obligation must actually perform such a review.  The hallmark of this review is the

use of independent, professional judgment by the attorney.  See Miller v. Wolposs &

Abramson, LLP, 321 F.3d 292, 301 (2d Cir. 2003) (stating that a collection letter from

an attorney implies that attorney has been involved in handling the debt); Clomon,

988 F.2d at 1321; Campuzano-Burgos, 497 F. Supp. 2d at 665.  This review need not

be lengthy, but it must permit the attorney to form a professional opinion about

---

[11]The court's conclusion is similar to that reached in Semper v. JBC Legal
Group, No. C04-2240L, 2005 WL 2172377 (W.D. Wash. Sept. 6, 2005), which
considered similar letters sent by Boyajian and JBC.  In Semper, the court found
that a JBC collection letter implied that an attorney had examined the debtor's
account.  It bore the heading "JBC Legal Group PC," and the signature block read
"JBC Legal Group, PC / Compliance Department."  See id. at *2.  The court
concluded that these indications of attorney review represented to the least
sophisticated debtor that a lawyer was involved in the communication.  See id.  In
the instant case, the letters sent to Martsolf bear stronger imprints of lawyer
involvement, with the words "Attorneys at Law" appearing at the top and bottom of
the letter and the body stating that JBC represents an organization claiming to own
the rights to Martsolf's debt.
    The principal case relied upon by defendants, Abels v. JBC Legal Group,
P.C., 428 F. Supp. 2d 1023 (N.D. Cal. 2005), is factually distinguishable.  Defendants
assert that "[i]t is well-settled that a pre-litigation collection letter from an attorney
or law firm, without more, does not violate the FDCPA."  (Doc. 116 at 14.)  However,
they cite to the portion of the Abels opinion that addressed whether the collection
letter threatened to litigate a time-barred debt.  See id. at 1028-29.  Abels held that a
letter, bearing the words "Attorney at Law," did not threaten litigation after the
limitations period.  See id.  Abels never addressed whether the letter appeared to
originate from an attorney.  Abels, therefore, does not compel the conclusion
advanced by defendants.

whether the debt is potentially viable, barred by the statute of limitations,

uncollectable due to the debtor's bankruptcy, and to evaluate similar legal

considerations.  See Miller, 321 F.3d at 305-06 (stating that collection letter on

attorney letterhead implies that attorney has made various types of legal

judgments, including the status of the debt); Bezpalko v. Gilfillan, Gilpin &

Brehman, No. Civ. A. 97-4923, 1998 WL 321268, at *8 (E.D. Pa. June 17, 1998)

(stating that FDCPA requires attorney to be involved in the mailing of a collection

letter if letter appears to originate from an attorney).  A high-speed, automated

review bereft of independent professional judgment does not demonstrate the type

of considered review that a collection letter on attorney letterhead implies.  See

Miller, 321 F.3d at 306; Boyd v. Wexler, 275 F.3d 642 (7th Cir. 2001) (stating that an

attorney whose firm issued approximately 50,000 collection letters per month could

be found to lack the type of involvement necessary to prevent an FDCPA violation);

Semper v. JBC Legal Group, No. C04-2204L, 2005 WL 2172377, at *2 (W.D. Wash.

Sept. 6, 2005.) (holding that letter signed by "JBC Legal Group, PC / Compliance

Department" would cause the least sophisticated debtor to believe that an attorney

was involved in the issuance of the letter.)  Automated technological processes are

permissible methods for collecting debt, but—when practiced by attorneys—they

must be accompanied by a disclaimer sufficient to inform the least sophisticated

debtor that no lawyer has personally reviewed the debtor's account.  See Greco, 412

F.3d at 364.  Any less intensive review misleads the debtor to believe the

"communication is from an attorney" who has fully assessed the legal status of the

debt. 15 U.S.C. § 1692e(3).

In the present case, Boyajian testified that, when reviewing debts, he uses a

variety of software applications, to evaluate large numbers of accounts quickly.  He

described his data analysis as follows:

> My review is a very high level review which involves a great deal of
> sorting and other type of selection queries that are predetermined in
> most cases and also drafted in other ways. . . . So my review is a review
> that I can do at a very high speed with a great deal of drill-down and
> thoroughness without a great deal of time on similarly situated types
> of data.

(Doc. 128 at 23-24.)  Similar testimony by Boyajian confirms that JBC software

programs evaluate accounts by verifying the availability of data such as the payee

and payor of a check, the amount and date thereof, and the bank routing number.

(Doc. 114 ¶ 5.)  Accounts that contain complete information are electronically

transmitted to a third-party printing house, which produces and mails collection

letters on behalf of JBC.  (Doc. 114 ¶ 6.)  Boyajian subjects accounts with

incomplete data to additional computer analysis that sift potentially collectable

debts from those that lack sufficient information to justify a collection letter.  (Doc.

107, Ex. D at 63-64; Doc. 128 at 25.)  All of these processes are performed at a rate of

megabytes per second with minimal human involvement.  (Doc. 128 at 25-26.)

Boyajian and JBC attorneys personally review files in bulk numbers based on the

results of computer programs applied to large amounts of data.  (Doc. 107, Ex. D at 64-65; Doc. 128 at 24-25.)[12]

The court concludes that these rapid, technologically aided review processes do not demonstrate the sort of independent analysis and professional opinion that must occur when a debt collector represents that an attorney has reviewed a debt. An attorney using these processes becomes little more than a computer operator unengaged in a considered legal analysis of the debtor's account.  See Miller, 321 F.3d at 306 (observing that a hurried review of collection files followed by issuance

---

[12]Martsolf argues that the voluminous number of accounts that JBC handles provides further evidence that attorneys do not review every file.  Between June 2003 and June 2004, JBC's third-party printer sent approximately four million letters on its behalf, 936,651 of which were in a form similar to those directed to Martsolf.  (Doc. 107 ¶¶ 35; Doc. 107, Ex. I ¶¶ 5-6; Doc. 117 ¶¶ 35.)  She hypothesizes that, assuming each letter represents one account and that each JBC attorney works forty hours per week, JBC would have expended only 7.5 seconds to review each account.  If only the letters of the sort sent to Martsolf received attorney review, the lawyers would have expended 32 seconds on each account.

Martsolf argues that this scant attention fails to comply with the standards for attorney review established in Boyd v. Wexler, 275 F.3d 642 (7th Cir. 2001).  In Boyd, the United States Court of Appeals for the Seventh Circuit performed a calculation like that above and estimated, without holding, that the process of reviewing and authorizing a collection file would take an average of fifteen minutes of attorney time.  See id. at 645.  The court then utilized similar calculations to illustrate the disparity between the number of letters that the defendants could reasonably review in one month and the roughly 51,000 letters that they actually sent during that time.  See id.

In the instant matter, the court declines to establish any concrete amount of time an attorney must dedicate to an account when representing that the account received an attorney's attention.  Nevertheless, Martsolf's calculations support the conclusion that defendants failed to attend to their collection accounts in the amount of detail required by the FDCPA after representing that a debt has been reviewed by an attorney.

of collection letters "with the push of a button" supports the conclusion that the

attorney failed to perform any professional review of debtor's file).  In fact, the

statute of limitations, which an attorney reviewing a debt should consider before

representing that it is collectable, see id.; supra Part III.A.1, wholly escaped the

review of Boyajian's computer programs in the instant case.[13]

---

[13]Martsolf moves to strike the portion of Boyajian's affidavit supporting his
motion for summary judgment that states:  "I have reviewed the records regarding
Ms. Martsolf and her debts owed to Outsource Recovery Management."  (See Doc.
114 ¶ 2; Doc. 124.)  Martsolf alleges that these statements are inconsistent with
Boyajian's earlier deposition testimony in which he testified as follows:

> Q.   Are you familiar with the file of Ashley Wood, also known as
>       Ashley Martsolf?
> A.   No.
> Q.   To the best of your knowledge, did you have any participation or
>       work on that file in April of 2004?
> A.   No.

(Doc. 124 attach. at 30.)
     A court presented with a declaration that contradicts a witness's previous
testimony may disregard the declaration for purposes of summary judgment.  See
Martin v. Merrell Dow Pharm., Inc., 851 F.2d 703, 706 (3d Cir. 1988).  Nevertheless,
the court need not do so if the declaration and the context of the previous
statements satisfactorily explain the reason for the contradiction or inconsistency.
See Young v. United States, No. Civ. A. 02-343, 2002 WL 31341082, at *5 n.2 (E.D.
Pa. Oct. 15, 2002) (quoting Stein v. Foamex Int'l, Inc., Civ. A. No. 00-2356, 2001 WL
936566, at *4 (E.D. Pa. Aug. 15, 2001).
     In the instant case, Boyajian stated that he performs computer-based
analyses on all collection accounts, which allow him to quickly evaluate the viability
of each debt.  He does not individually examine every file, but he is involved with
each one through the execution of software algorithms.  During the deposition
quoted above, he described his work processes for handling debts, including that
owed by Martsolf.  (Compare Doc. 124 attach., with Doc. 137, Ex. A at 64.)
Boyajian's deposition, when considered in toto, reveals that Boyajian performed his
standard electronic analyses on Martsolf's file but did not devote any personalized
attention to it.  His declaration, when read in its entirety, depicts a similar review

The court does not doubt the utility or efficacy of the technological processes in evaluating debt accounts, nor should the court's opinion be construed to discourage the use of technological processes.  The court's holding simply reflects the FDCPA mandate that attorney debt collectors' communications with debtors must be truthful and accurately represent the extent of the review of the debtor's account.  See 15 U.S.C. § 1692e ("A debt collector may not use any false, deceptive, or misleading representation in connection with the collection of any debt.")  An attorney debt collector who represents that the attorney has personally evaluated the debtor's accounts must have actually performed such a review.  If  technological process make such a review unnecessary, the attorney simply cannot represent that such a review has occurred.  See Greco, 412 F.3d at 365 (holding that a collection letter from an attorney did not violate § 1692e(3) because it contained a disclaimer that "no attorney with this firm has personally reviewed the particular circumstances of your account").  Any misinterpretations can be easily dispelled by including a disclaimer in the collection letter describing the level of the attorney's involvement in analyzing the debt.  Id. at 364

---

process.
     The court finds that any inconsistency between Boyajian's deposition and his declaration dissolves upon consideration of the context in which the respective statements are made.  Therefore, the court holds that the evidence surrounding the allegedly contradictory deposition testimony and declaration is sufficient to resolve any inconsistency between the two.  The motion to strike will be denied.

In the instant matter, JBC and Boyajian performed only cursory technological reviews of debt accounts, but their letters represent a significantly greater level of attorney involvement.  The letters do not include a disclaimer stating that no attorney has personally reviewed the debt.  The least sophisticated debtor would believe that a JBC attorney has participated in the handling of their debt when, in fact, no attorney has done so.  JBC and Boyajian have therefore violated the FDCPA.  Accordingly, Martsolf's motion for summary judgment will be granted to the extent Martsolf claims that defendants misrepresented the level of attorney involvement in the debt; defendant's motion will be denied.

### B.    <u>Vicarious Liability of ORM</u>

An entity that owns a debt may be liable for FDCPA violations of a debt collector it engages to collect the obligation provided that the owner of the debt is itself a debt collector.  <u>See</u> <u>Pollice</u>, 225 F.3d at 404.  "[F]ederal courts that have considered the issue have held that the client of an attorney who is a 'debt collector,' as defined in § 1692a(6), is vicariously liable for the attorney's misconduct if the client is itself a debt collector as defined by the statute."  <u>Id.</u>; <u>see also</u> <u>Fox v. Citicorp Credit Svcs.</u>, 15 F.3d 1507, 1516 (2d Cir. 1994) (concluding that FDCPA liability may be vicariously applied to a client who retains an attorney to act on the client's behalf).  Hence, FDCPA liability levied upon an attorney debt collector may be equally imposed upon the attorney's debt collector client.  <u>See</u> <u>id.</u>; <u>Dahlhammer v. Citibank (S.D.) N.A.</u>, No. 05-CV-1749, 2006 WL 3484352, at *7 (M.D. Pa. Nov. 30,

2006); <u>Flamm v. Sarner & Assocs., P.C.</u>, No. Civ. A. 02-4302, 2006 WL 42770, at *4 (E.D. Pa. Jan. 3, 2006.)

As an initial matter, the court notes that ORM is a debt collector within the definition of the FDCPA. <u>See</u> 15 U.S.C. § 1692a(6) (stating that an entity is a debt collector if it engages "in any business the primary purpose of which is the collection of any debts"); (Doc. 107, Ex. G at 33-34 ("Outsource Recovery Management does financial transactions[,] . . . predominantly buying and selling distressed debt.")). ORM advances two legal arguments against vicarious liability. First, it contends that vicarious FDCPA liability is appropriate only if a debt collector's attorney violates venue provision of the FDCPA, 15 U.S.C. § 1692i. (<u>See</u> Doc. 116 at 21.) The court rejects this conclusion in light of <u>Pollice v. National Tax Funding, LP</u>, 225 F.3d 379 (3d Cir. 2000), which applied vicarious liability under the FDCPA to a debt collector agent whose attorney violated § 1692f of the codified Act. <u>See</u> <u>Pollice</u>, 225 F.3d at 405-06. "This is a fair result because an entity that is itself a 'debt collector'—and hence subject to the FDCPA—should bear the burden of monitoring the activities of those it enlists to collect debts on its behalf." <u>Id.</u> at 405.

Second, ORM argues that vicarious liability is inappropriate because it lacks an agency relationship with JBC sufficient to allow it to control JBC's action and warrant imposing vicarious liability. "An agency relationship is formed by the 'manifestation of consent by one person to another that the other shall act on his behalf and subject to this control, and consent by the other to so act." <u>See</u> <u>Phillips</u>

v. Andrews, 128 F. App'x 935, 937 (3d Cir. 2005) (quoting RESTATEMENT (SECOND) OF

AGENCY § 15 (1981)).  ORM purchases defaulted debts for collection purposes.  It

retains various law firms to engage in collection efforts on its behalf.  Defendants

admit that an attorney-client relationship exists between ORM and JBC for that

purpose.  (Doc. 110 ¶8; Doc. 114 ¶¶ 3-4; Doc. 120 ¶ 8.)  In furtherance of their

relationship, ORM transmits large amounts of data to JBC, and JBC in turn

produces collection letters such as those received by Martsolf.  Each letter includes

a notice of ORM's privacy and instructs debtors to direct questions to JBC.  (See

Doc. 107, Ex. G & H.)  Boyajian, as the president of both companies and the owner

of JBC, designed and administered this process.

The court finds that the ORM and JBC undisputedly maintain an attorney-

client and agent-principal relationship for the purpose of collecting debts.  Hence,

ORM is vicariously liable for FDCPA infractions that JBC commits while acting on

its behalf.  See Pollice, 225 F.3d at 404-05; Gary v. Goldman & Co., 180 F. Supp. 2d

668, 673 (E.D. Pa. 2002).  Plaintiff's motion for summary judgment on the vicarious

liability claims against ORM will therefore be granted; defendants' motion for

summary judgment on the same claims will be denied.

## IV.   **Conclusion**

Defendants JBC, ORM, and Boyajian violated the FDCPA by threatening to

initiate litigation on a time-barred debt and by representing that her debt had been

reviewed by an attorney when, in fact, no such review had occurred.  Summary

judgment will be entered in favor of plaintiff and against these defendants on these claims. They did not violate the FDCPA by representing that they were entitled to returned-check fees under Pennsylvania law or by representing that the total amount of Martsolf's debt included such fees. Summary judgment will be entered in favor of defendants and against plaintiffs as to these claims. Plaintiff no longer maintains any claims against defendant Brandon, and summary judgment will be entered in his favor on all counts.

The instant case will be set for trial on the issue of damages, which present an issue of fact for resolution by a jury. Kobs v. Arrow Svc. Bureau, Inc., 134 F.3d 893, 897 (7th Cir. 1998) (holding that plaintiff has a right to jury trial on the issue of damages under the FDCPA); Sibley v. Fulton Dekalb Collection Svc., 677 F.2d 830, 834 (11th Cir. 1982) (same); Smith v. Law Offices of Mitchell N. Kay, 124 B.R. 182, 193 (D. Del. 1991) (holding that jury trial to determine issue of damages under FDCPA is appropriate after entry of declaratory judgment on liability).

An appropriate order will issue.


  S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge

Dated:      January 30, 2008

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ASHLEE MARTSOLF**, on behalf of herself and others similarly situated, | : | **CIVIL ACTION NO. 1:04-CV-1346** |
| | : | |
| | : | **(CLASS ACTION/CONSOLIDATED)** |
| **Plaintiff,** | : | |
| | : | **(Judge Conner)** |
| **v.** | : | |
| | : | |
| **JBC LEGAL GROUP, P.C., JACK H. BOYAJIAN, MARVIN BRANDON, and OUTSOURCE RECOVERY MANAGEMENT, INC.,** | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| **Defendants** | : | |

## ORDER

AND NOW, this 30th day of January, 2008, upon consideration of plaintiff's

motion to strike (Doc. 124), of defendant's request for judicial notice (Doc. 112), and

of the cross-motions for summary judgment (Docs. 105, 108), it is hereby ORDERED

that:

1. Plaintiff's motion to strike (Doc. 124) is DENIED.

2. Plaintiff's motion for summary judgment (Doc. 105) is GRANTED in part and DENIED in part as follows:

   a. The motion is GRANTED with respect to plaintiff's claims alleging that defendants JBC Legal Group, P.C., Jack H. Boyajian, and Outsource Recovery Management, Inc. threatened to institute litigation to enforce time barred debts and represented that plaintiff's debt had been reviewed by an attorney when, in fact, no such review had occurred.

   b. The motion is otherwise DENIED.

3.     Defendants' motion for summary judgment (Doc. 108) is GRANTED in part and DENIED in part as follows:

     a.     The motion is GRANTED with respect to all claims against defendant Marvin Brandon.

     b.     The motion is GRANTED with respect to claims alleging that defendants JBC Legal Group, P.C., Jack H. Boyajian, and Outsource Recovery Management, Inc. misrepresented their right collect returned-check fees and misrepresented the total amount of plaintiff's debt.

     c.     The motion is otherwise DENIED.

4.     The Clerk of Court is directed to defer entry of judgment until the conclusion of this case.

5.     A revised pre-trial and trial schedule shall issue by future order of court.

                 _S/ Christopher C. Conner_____
                 CHRISTOPHER C. CONNER
                 United States District Judge